UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Sandra Lederman, individually and on behalf of all others similarly situated, | 1:21-cv-04528 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| The Hershey Company, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. The Hershey Company ("defendant") manufactures, labels, markets, and sells a chocolate topping described as "Hot Fudge," under the Hershey's brand ("Product").



1

2. This representation is misleading because it gives consumers the impression it contains a greater relative and absolute amount of the expected (hot) fudge ingredients than it does.

**I. DEFINITIONS OF FUDGE**

3. Fudge "is a type of sugar candy that is made by mixing sugar, butter and milk."[1]

4. "Hot fudge" is a chocolate product often used as a topping for ice cream and desserts, in a heated form.

5. When making "hot fudge," butter is typically replaced with heavy cream, resulting in a thick, pourable liquid while hot, becoming more viscous as it cools.

6. The difference between "hot fudge" and "chocolate sauce" is due to the fat content, as the former is thicker and richer, while the latter is thinner and more pourable.

7. Though fudge can have any flavor, milkfat is the central component.

8. An 1893 recipe for fudge called for "Four cups granulated sugar; one cup cream; one cup water; one-half cake chocolate; one-half Cup butter."[2]

9. In 1896, The Los Angeles Times published the original fudge recipe by the Vassar students credited with first making fudge: "Two cups of sugar, one cup of milk, a piece of butter one-half the size of an egg" and added flavoring.[3]

10. A 1902 fudge recipe from Mrs. Rorer's New Cook Book includes:[4]

> 4 ounces of chocolate
> 2 cups of sugar
> 1 teaspoonful of vanilla
> 1/2 cup of milk
> 1 rounding tablespoonful of butter

---

[1] Wikipedia contributors. "Fudge." *Wikipedia, The Free Encyclopedia*. Wikipedia, The Free Encyclopedia, 5 Jan. 2021. Web. 8 Jan. 2021.
[2] Mrs. J. Montgomery Smith, of Wisconsin, Alternate Lady Manager.
[3] Los Angeles Times, "'Fudges' Are Vassar Chocolates," May 11, 1896, p.2.
[4] Sarah Tyson Rorer [Arnold and Company: Philadelphia] 1902, p. 629.

11. Molly Mills, one of today's leading authorities on fudge, recently described it as made "most commonly from butter, milk, sugar, and chocolate."[5]

12. The Oxford Companion to Sugar and Sweets notes that:

> Traditionally, fudge is made by gently boiling granulated sugar and milk to the soft-ball stage (234° to 240°F/ 112° to 115°C); adding butter; cooling the mixture somewhat (120°F/49°C); then beating until thick, creamy, and less glossy.[6]

13. The encyclopedic, An A-Z of Food and Drink, describes fudge as "a sort of soft, somewhat toffee-like sweet made by boiling together sugar, butter, and milk."[7]

14. A leading treatise on confectionary science and technology offers a model commercial formulation for fudge which includes between eight and sixteen percent butter and between twelve and twenty percent sweetened condensed milk.

10.2 Formulations and Ingredients 275

Table 10.1 Typical batch formulations (in %) for caramel, fudge and toffee

| | Commercial caramel (ungrained) | Caramelized sugar caramel | Fudge | English toffee (American) |
|---|---|---|---|---|
| Water | 15–25 | 0 | 10–15 | 8–10 |
| Sucrose | 10–20 | 55–65 | 30–50 | 45–55 |
| Glucose syrup (42 DE) | 36–46 | 0–5 | 10–20 | 0 |
| Sweetened condensed milk[a] | 20–40 | 0 | 12–20 | 0 |
| Cream | 0 | 25–35 | 0 | 0 |
| Butter[b] (fat) | 5–15 | 6–12 | 8–16 | 40–50 |
| Fondant | 0 | 0 | 3–5 | 0 |
| Chocolate liquor/cocoa powder | 0 | 0 | 0–10 | 0 |
| Salt | 0.2–0.5 | 0.2–0.5 | 0.2–0.5 | 0.3–0.6 |
| Vanilla | 0.1–0.3 | 0.1–0.3 | 0.1–0.3 | 0.1–0.3 |
| Lecithin | 0–0.4 | 0–0.4 | 0–0.4 | 0.25–0.45 |
| Nuts (unroasted) | 0 | 0 | 0–12 | 6–12 |

[a]Other dairy ingredients might include evaporated milk or dried milk powder
[b]Salted butter needed for toffee

15. Dictionaries confirm the definitions held by confectionery experts.

16. Google Dictionary – based on its leading search engine that discovers the most relevant and accurate information – defines fudge as "a soft candy made from sugar, butter, and

---

[5] Molly Mills, Come Get Your Fudge: 40 Tasty and Creative Fudge Recipes for Everyone, Amazon Digital Services LLC, June 11, 2019.
[6] Goldstein, Darra, and Sidney Mintz. The Oxford companion to sugar and sweets. Oxford University Press, 2015.
[7] John Ayto, An A-Z of Food and Drink, Oxford University Press, 2002, p. 133.

milk or cream."[8]

17. The Cambridge Dictionary defines fudge as "a soft sweet made from sugar, butter, and milk."[9]

18. Collins Dictionary defines fudge as "a soft brown candy that is made from butter, cream, and sugar."[10]

19. Dictionary.com defines fudge as "a soft candy made of sugar, butter, milk, chocolate, and sometimes nuts."[11]

20. Macmillan Dictionary defines fudge as a "soft brown sweet food made from sugar, butter, and milk or cream."[12]

## II. FAT INGREDIENTS ARE ESSENTIAL TO FUDGE

21. The quality of fudge depends on the amount and type of fat-contributing ingredients.[13]

22. The small droplets of fat are dispersed throughout the candy mass, providing lubricity and impart desirable flavor release.

23. If the fat content is too high, it can lead to oil separation and a greasy texture.[14]

24. The fat ingredients are typically from dairy or vegetable oils.

25. The dairy ingredients are based on milk fat, mainly added through butter, which is 80% milkfat.

26. Other dairy ingredients like milk and milk derivatives may be added as well.

---

[8] Fudge definition – Google search.
[9] Cambridge Dictionary, fudge.
[10] Collins Dictionary, fudge.
[11] Dictionary.com, fudge.
[12] Macmillan Dictionary, fudge.
[13] International Dairy Federation, Bulletin, 1982.
[14] Hartel R.W., von Elbe J.H., Hofberger R. (2018) Caramel, Fudge and Toffee. In: Confectionery Science and Technology. Springer, Cham. https://doi.org/10.1007/978-3-319-61742-8_10

27. Vegetable oil ingredients like palm kernel and palm oil, are solid at room temperature, and referred to as "hard [vegetable] fats."

28. The dairy ingredients are based on milk fat, mainly added through butter, which is 80% milkfat.

29. Dairy ingredients impart a creamy, rich taste to fudge, because milkfat contains hundreds of lactones, aroma compounds which contribute to its taste.

30. Milk fat melts at about mouth temperature (35 °C/95 °F) and does not contribute to a waxy sensation.

31. Alternatives to milk fat – such as vegetable oils – do not melt at mouth temperature and leave a waxy mouthfeel.

32. Vegetable fats do not contribute to the flavor of fudge, because they are theoretically "refined, bleached and deodorized."

33. However, these ingredients are subject to reversion where they contribute off-odors to foods.

34. One popular recipe website echoes the importance of dairy ingredients to fudge, advising, "When making fudge, be sure to use good quality butter and do not substitute margarine (vegetable oils)," since they contain more water and can prevent the fudge from setting up properly.[15]

35. Another site cautions, "Look for recipes that call for butter instead of margarine (vegetable oils)."[16]

36. One chef recommends to "Never use margarine (vegetable oils) instead of butter [in fudge], because your fudge won't taste as good and will have a shorter shelf life."

---

[15] Use Real Butter For Making Best Fudge, RecipeTips.com.
[16] Easy Fudge Making Tips, The Happy Housewife.

5

## III. STATE AND FEDERAL REGULATIONS REQUIRE FRONT LABEL TO IDENTIFY PRODUCT AS SOMETHING OTHER THAN FUDGE, I.E., "CHOCOLATE SAUCE"

37. Federal and identical state regulations require a product's front label to contain a common or usual name which accurately identifies or describes, "in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a); Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq.; 410 ILCS 620/21(j) ("[a] federal regulation automatically adopted pursuant to this [Federal Food, Drug & Cosmetic] Act takes effect in this State on the date it becomes effective as a Federal regulation.").

38. Defendant's representations violate 21 U.S.C. § 343(a)(1) and 410 ILCS 620/11, which deem a food misbranded when the label contains a statement that is "false or misleading."

39. Thus, a violation of federal food labeling laws is an independent violation of Illinois law and actionable as such.

40. The Illinois Consumer Fraud and Deceptive Business Practices Act provides protection for consumers purchasing products like Defendant's Product, and states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful

815 ILCS 505/2.

41. The thickness of a liquid topping – which separates from "hot fudge" from "chocolate sauce" – is basic front label information consumers rely on when making quick decisions at the grocery store.

42. The thickness of the Product is controlled by its ingredients, which have a material bearing on price or consumer acceptance, and consumers believe the expected dairy fat ingredients are present in an amount greater than is the case.

6

43. However, the Product lacks ingredients essential to hot fudge – cream and whole milk – and substitutes lower quality and lower-priced vegetable oil, skim milk, and whey.

**INGREDIENTS:** HIGH FRUCTOSE CORN SYRUP; SWEETENED CONDENSED SKIM MILK [SKIM MILK; SUGAR]; CORN SYRUP; WATER; HYDROGENATED COCONUT OIL; COCOA; SKIM MILK; CONTAINS 2% OR LESS OF: COCOA PROCESSED WITH ALKALI; DISODIUM PHOSPHATE; SALT; SODIUM CITRATE; MONO AND DI-GLYCERIDES; WHEY (MILK); POTASSIUM SORBATE, TO MAINTAIN FRESHNESS; VANILLIN, ARTIFICIAL FLAVOR; POLYSORBATE 60.

INGREDIENTS: HIGH FRUCTOSE CORN SYRUP; SWEETENED CONDENSED SKIM MILK [SKIM MILK; SUGAR]; CORN SYRUP; WATER; HYDROGENATED COCONUT OIL; COCOA; SKIM MILK; CONTAINS 2% OR LESS OF: COCOA PROCESSED WITH ALKALI; DISODIUM PHOSPHATE; SALT; SODIUM CITRATE; MONO AND DI-GLYCERIDES; WHEY (MILK); POTASSIUM SORBATE, TO MAINTAIN FRESHNESS; VANILLIN, ARTIFICIAL FLAVOR; POLYSORBATE 60. Ⓤ D

44. The dairy ingredients listed include "sweetened condensed skim milk [skim milk; sugar]" (second most predominant), "skim milk" (seventh) and "whey (milk)" (thirteenth).

45. Unlike whole milk which contains valuable milk fat, skim milk has no fat and whey has a *de minimis* amount of milk fat.

46. Whey is mainly protein, and the watery part of milk separated from the coagulable part or curd, and a by-product of cheese manufacturing.

47. The Product's fat content is provided almost exclusively by the fifth most predominant ingredient, "hydrogenated coconut oil."

48. Vegetable fats like coconut oil are often used in combination with milk fat ingredients to reduce costs.

7

49. However, the Product does not use this vegetable fat in combination with milk fat, as skim milk and whey are lacking in milk fat.

50. Reasonable consumers are misled by the identifying term, "Fudge," because they expect this means a non-*de-minimis* relative amount of dairy ingredients containing milk fat, like whole milk, butter, and cream, instead of lower-cost and lower quality replacements like skim milk, whey, and vegetable fat.

51. The result is that the Product provides less satiety, a waxy and oily mouthfeel, and leaves an aftertaste.

52. Consumption of dairy ingredients with milk fat, like butter and milk, do not have the negative effects on cholesterol compared to vegetable oils.

53. Consumption of vegetable oil is linked to health problems, like increased chances of heart disease.

54. Milk fat ingredients also contain the fat-soluble vitamins A, D, E, and K, which are absent from hardened vegetable fats.

55. Dairy ingredients without their fat content removed impart a creamy, rich taste and texture to fudge, as butter and (whole) milk contain hundreds of lactones, well-known aroma compounds which contribute to taste.

56. The additional cost of using dairy ingredients without the fat content removed – what consumers expect in a fudge product under the Hershey's brand – would not significantly or materially increase the price, as the Product is already sold at a premium price.

57. Fudge toppings which get their fat content exclusively or predominantly from dairy ingredients are not a rare or pricy delicacy that would make a reasonable consumer "double check" the relative contribution of dairy and non-dairy ingredients to the fat content, by scouring the

8

packaging.

58. Fudge toppings with fat only from dairy ingredients exist in the marketplace and are not technologically or otherwise unfeasible to produce.

59. Competitor toppings from Sanders is described as "Milk Chocolate Hot Fudge," but gets its fat content from dairy, listing "cream" as the second most predominant ingredient, and "(whole) milk," as the sixth second most predominant ingredient.



60. Consumers seeing the two products will purchase Defendant's, thinking it is of equivalent quality to the competitor, and believing it is higher quality than it is.

61. Given that the Product is sold under the Hershey's brand, which to consumers is

9

synonymous to quality, Plaintiff had no reason to expect the Product lacked the relative amount and type of ingredients identified herein.

## IV. CONCLUSION

62. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of the Product, relative to itself and other comparable products or alternatives.

63. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

64. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

65. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

66. The Product is sold for a price premium compared to other similar products, no less than $3.07 for 12.8 OZ (362 g), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

### Jurisdiction and Venue

67. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

68. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

69. Plaintiff Sandra Lederman is a citizen of Illinois.

70. Defendant The Hershey Company is a Delaware corporation with a principal place of business in Hershey, Dauphin County, Pennsylvania

71. The parties are citizens of different states.

72. Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

73. Venue is in the Eastern Division because plaintiff resides in Cook County, which is where the events giving rise to the present claims occurred, the awareness of the misrepresentations and consumption of the Product.

Parties

74. Plaintiff Sandra Lederman is a citizen of Tinley Park, Cook County, Illinois.

75. Defendant The Hershey Company, is a Delaware corporation with a principal place of business in Hershey, Pennsylvania, Dauphin County.

76. Defendant is one of the largest chocolate and confectionary manufacturers in the world.

77. Founded by Milton S. Hershey, Hershey democratized chocolate, which was previously only available to monied elites.

78. Today, Defendant produces dozens of chocolate and confectionary items in the U.S. and worldwide.

79. One of the greatest accomplishments of Defendant's founder was the establishment of the Hershey Industrial School in 1909 for orphaned children.

80. The school continues to provide the highest quality education and preparation for underprivileged youths at its campus in Hershey, Pennsylvania.

81. The Product is sold at thousands of retail locations – grocery stores, drug stores, big box stores, convenience stores, etc. – and online.

82. The Product is sold in sizes including 12.8 OZ (362 g).

83. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at stores including Walmart, 4005 167th St, Country Club Hills, IL 60478, between May and June 2021, among other times.

84. Plaintiff bought the Product because she expected it would contain ingredients essential to (hot) fudge, understood by her as containing the above-identified traditional fudge ingredients.

85. Plaintiff wanted more than a "fudge taste," which she nevertheless failed to receive, due to the relatively greater amount of vegetable oil vis-à-vis any dairy fat ingredients.

86. Plaintiff wanted a relatively greater amount of (hot) fudge ingredients, which was not received.

87. Plaintiff did not expect that the "hot fudge" would get its consistency and texture from vegetable fats and use dairy ingredients with their valuable fat content removed.

88. Plaintiff bought the Product at or exceeding the above-referenced price.

89. Plaintiff relied on the representations identified here.

90. Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

91. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

92. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

93. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

Class Allegations

94. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class:** All persons in the States of Iowa and Arkansas who purchased the Product during the statutes of limitations for each cause of action alleged.[17]

95. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

96. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

97. Plaintiff is an adequate representative because her interests do not conflict with other members.

98. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

99. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

100. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

101. Plaintiff seeks class-wide injunctive relief because the practices continue.

---

[17] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: Iowa (Consumer Fraud and Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.16 et seq.); Arkansas (Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et. seq.).

<u>Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.</u>

(Consumer Protection Statute)

102. Plaintiff incorporates by reference all preceding paragraphs.

103. Plaintiff and class members desired to purchase a product that contained components essential to fudge, such as dairy ingredients without their fat content removed, instead of getting its texture and fat content from vegetable oil.

104. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

105. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

106. Plaintiff relied on the representations.

107. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

(On Behalf of the Consumer Fraud Multi-State Class)

108. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

109. Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

110. As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State

Class, have sustained damages in an amount to be proven at trial.

111. In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

112. The Product was manufactured, labeled, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained components essential to fudge, such as dairy ingredients without their fat content removed, instead of getting its texture and fat content from vegetable oil.

113. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

114. This duty is based on Defendant's outsized role in the market for this type of Product.

115. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

116. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

117. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

118. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

119. Defendant had a duty to truthfully represent the Product, which it breached.

120. This duty is based on defendant's position, holding itself out as having special

15

knowledge and experience this area, as custodian of the Hershey's brand.

121. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a nationally recognized and trusted brand.

122. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

123. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

124. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained components essential to fudge, such as dairy ingredients without their fat content removed, instead of getting its texture and fat content from vegetable oil

125. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

126. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the

challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: August 24, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com