IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA LEDERMAN, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) | Case No. 21-cv-4528 |
| | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| v. | ) | |
| | ) | |
| THE HERSHEY COMPANY, | ) | |
| | ) | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sandra Lederman initiated this putative class action against Defendant Hershey Company on August 24, 2021, after its "Hot Fudge Topping" (the "Product") failed to meet her expectations. Plaintiff believes that the Product's label is misleading because it is not *real* fudge; rather, in her view, it is simply "chocolate sauce." Plaintiff alleges the Product "lacks ingredients essential to hot fudge," and thus is deceptively labeled. She asserts that this misnomer gives rise to several claims: violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); violation of consumer-protection laws in Iowa and Arkansas; state-law claims for breach of express and implied warranties and under the Magnuson Moss Warranty Act ("MMWA"); negligent misrepresentation; fraud; and unjust enrichment. Plaintiff asserts federal court jurisdiction on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). Before the Court is Defendant's motion to dismiss [15] pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons stated below, Defendant's motion [15] is granted. Plaintiff is given leave to replead no later than September 19, 2022. If Plaintiff does not file an amended complaint by that date (or any extension granted by the Court), the case will be dismissed with prejudice and a final judgment will be entered. If Plaintiff files an amended

complaint, Defendant's responsive pleading will be due by October 17, 2022, and the Court will set a status hearing shortly thereafter.

I.       Background[1]

Defendant manufactures, labels, markets, and sells "Hot Fudge Topping" under the Hershey's brand. [1 at ¶ 1.] As shown in the image below, the product is sold in a jar with a front label that says, "Hershey's Hot Fudge Topping," "120 calories per 2 TBSP," and indicates that the jar has a net weight of 12.8 oz.:



[*Id.*] The back of the label lists the ingredients:

---

[1] For purposes of Defendant's motion to dismiss, the Court accepts as true all well-pled allegations set forth in the complaint [1] and draws all reasonable inference in Plaintiff's favor. *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

2

> INGREDIENTS: HIGH FRUCTOSE CORN SYRUP; SWEETENED CONDENSED SKIM MILK [SKIM MILK; SUGAR]; CORN SYRUP; WATER; HYDROGENATED COCONUT OIL; COCOA; SKIM MILK; CONTAINS 2% OR LESS OF: COCOA PROCESSED WITH ALKALI; DISODIUM PHOSPHATE; SALT; SODIUM CITRATE; MONO AND DI-GLYCERIDES; WHEY (MILK); POTASSIUM SORBATE, TO MAINTAIN FRESHNESS; VANILLIN, ARTIFICIAL FLAVOR; POLYSORBATE 60. Ⓤ D

[*Id.* at ¶ 43.] As the label indicates, the product contains several dairy ingredients, including "sweetened condensed skim milk (skim milk; sugar)," skim milk, and "whey (milk)." [*Id.* at ¶ 44.]

Plaintiff alleges that she purchased the Product on one or more occasions between May and June 2021. [1 at ¶ 83.] She claims that she bought Hershey's Hot Fudge Topping because "she expected it would contain ingredients essential to (hot) fudge," but instead had purchased a product that "get[s] its consistency and texture from vegetable fats and use[s] dairy ingredients with their valuable fat content removed." [*Id.* at ¶¶ 84-87.] Because the topping "lacks ingredients essential to hot fudge – cream and whole milk – and substitutes lower quality and lower priced vegetable oil, skim milk, and whey," the resulting confection "provides less satiety, a waxy and oily mouthfeel, and leaves an after taste." [*Id.* at ¶¶ 43, 51.] Plaintiff believes that these "misleading representations and omissions" allow Defendant to sell the Product at "a higher price than it would otherwise be sold for," and as a result, she suffered damage when she paid more for the Product than its worth. [*Id.* at ¶¶ 65-66.]

**II.     Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it

3

rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Additionally, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. (quoting *McCauley*, 671 F.3d at 616).

Claims alleging fraud, including those asserted under the ICFA, are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), see *Haywood v. Massage*

4

*Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018), which means that Plaintiff must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)).

III. Analysis

Plaintiff defines fudge as a "soft candy" made from sugar, butter, and milk or cream (and "sometimes nuts"). [1 at ¶¶ 16-20.] According to Plaintiff, the value of fudge turns on its dairy content. She maintains that "[t]he quality of fudge depends on the amount and type of fat-contributing ingredients" [1 at ¶ 21], and those "fat ingredients are typically from dairy or vegetable oils." [1 at ¶ 24.] "If the fat content is too high, it can lead to oil separation and a greasy texture" [1 at ¶ 23], but if the fat content is too low, the resulting fudge "provides less satiety, a waxy and oily mouthfeel, and leaves an aftertaste" [1 at ¶ 51]. In Plaintiff's view, Hershey's Hot Fudge Topping falls into the latter category—its fat content is too low to call it fudge.

A. ICFA

The "ICFA 'is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices.'" *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)). "To prevail on a claim under the ICFA, 'a plaintiff must plead and prove that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages.'" *Benson v. Fannie May Confections Brands, Inc.*,

5

944 F.3d 639, 646 (7th Cir. 2019) (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)).

Plaintiff asserts pursuant to the ICFA that Defendant used "false and deceptive representations" to sell its Hot Fudge Topping product. [1 at ¶ 104.] Plaintiff maintains that she purchased the product believing that it "contained components essential to fudge, such as dairy ingredients without their fat content removed, instead of getting its texture and fat content from vegetable oil." [*Id.* at ¶ 103.] Had she known that the product lacked those "essential" ingredients, Plaintiff "would not have purchased the Product or paid as much." [*Id.* at ¶ 107.] Defendant challenges Plaintiff's narrow definition of "fudge." It maintains that the product's label—Hot Fudge Topping—"perfectly describes the thick chocolate sauce contained therein" [16 at 5], and thus is not misleading. Defendant seeks dismissal on Plaintiff's ICFA claim on grounds that she has not sufficiently alleged a deceptive act or practice.

"[A] practice is deceptive 'if it creates a likelihood of deception or has the capacity to deceive.'" *Benson*, 944 F.3d at 646 (quoting *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001)). Courts analyze the likelihood of deception by applying a "reasonable consumer" standard, see *id.*, which requires considering whether there is "'a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Weaver v. Champion Pet Foods USA Inc.*, 3 F.4th 927, 937 (7th Cir. 2021) (quoting *Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 973 (7th Cir. 2020)). Where, as here, the claim is about the accuracy of the Product's labeling, "[w]hat matters most is how real consumers understand and react to the advertising." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020). "And where plaintiffs base deceptive advertising claims on unreasonable

6

or fanciful interpretation of labels or other advertising, dismissal on the pleadings may well be justified." *Id.*

The reasonable consumer standard proves to be an insurmountable hurdle for Plaintiff's ICFA claim. While Plaintiff may have an acute sense of fudge, is the reasonable consumer as discerning? Not likely. Because the complaint fails to plausibly allege that reasonable consumers are as shrewd about fudge as Plaintiff and the purported class members, Plaintiff's ICFA claim fails. See *Karlinski v. Costco Wholesale Corp.*, 2022 WL 2867383, at *5 (N.D. Ill. July 21, 2022) ("On a motion to dismiss, the Court need not accept the conclusion that a reasonable consumer would read the Product's 'chocolate' labeling to imply that the chocolate would be made mostly or entirely of cacao bean ingredients.").

The complaint cites a collection of sources which Plaintiff claims demonstrate "how fudge has been consistently defined." [20 at 4.] Among those are several dictionaries [see 1 at ¶¶ 15-20], an 1896 Los Angeles Times article [1 at ¶ 9], a "1902 fudge recipe from Mrs. Rorer's New Cook Book" [1 at ¶ 10], Molly Mills who is "one of today's leading authorities on fudge" [1 at ¶ 11], and the encyclopedic "An A-Z of Food and Drink" [1 at ¶ 13]. These sources purport to represent the way "confectionery experts" define "fudge." [1 at ¶ 15.]

But even if the reasonable confectionery expert deems milkfat essential to fudge, Plaintiff has not shown that the reasonable 21st century *consumer* has the same expectations. Nowhere in the complaint does Plaintiff allege that the reasonable consumer defines "fudge" according to classic recipes created by experts. Plaintiff seems to inadvertently admit this in her briefing on this motion, as she argues that "[b]y showing how fudge has been consistently defined, across lay persons, home chefs, college students, and scientists, to be made from dairy ingredients based on milk fat, mainly through added butter which is 80% milkfat, Plaintiff's expectation of these

7

attributes was reasonable." [20 at 4 (quotations omitted).] Plaintiff misunderstands that the "reasonable consumer" standard is not based on a "consistent" understanding across random subgroups. Instead, the reasonable consumer standard asks whether there is a "probability that a significant portion of the *general consuming public* * * * acting reasonably in the circumstances, could be misled." *Rudy v. Family Dollar Stores, Inc.*, 2022 WL 345081, at *3 (N.D. Ill. Feb. 4, 2022) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)) (emphasis added).

Another court in this circuit dealt with a near-identical case in *Reinitz v. Kellogg Sales Co.*, 2022 WL 1813891 (C.D. Ill. June 2, 2022), only there, the fudge in question was in Kellogg's Frosted Chocolate Fudge Pop-Tarts, rather than the Hot Fudge Topping at the center of this case.[2] The plaintiff in that case also took issue with an alleged lack milkfat ingredients "which she claims are integral to fudge." *Id.* at *1. The court found that plaintiff's complaint failed to meet the reasonable consumer standard, noting that "[w]hether or not experts agree, Plaintiff fails to support that the average consumer would believe a fudge product must, of necessity, contain milkfat." *Id.* at *3. Here, as in *Reinitz*, Plaintiff's citations to a variety of "experts" do not demonstrate that milkfat is a *required* ingredient in fudge—Plaintiff even acknowledges that the fat ingredients in fudge "are typically from dairy or vegetable oils" [1 at ¶ 24].

Furthermore, even if Plaintiff had established that the reasonable consumer's fudge expectations were consistent with experts such as Molly Mills, she has not alleged that those expectations extend to *hot* fudge, which is the product at issue in this case. Plaintiff admits that fudge and hot fudge are different products, as "[w]hen making 'hot fudge,' butter is typically replaced with heavy cream, resulting in a thick, pourable liquid while hot, becoming more viscous

---

[2] A judge in the Southern District of New York reached a similar conclusion just last month regarding a challenge to the alleged mislabeling of "White Fudge Covered Pretzels" sold under the Flipz brand. *Spurck v. Demet's Candy Company, LLC*, No. 21-cv-5506 (NSR), slip op. at 6 (S.D.N.Y. July 27, 2022) (citing *Reinitz* and dismissing claim under New York law).

as it cools" [1 at ¶ 5], but goes on to cite recipes for fudge, not hot fudge. Accepting as true that "butter is typically replaced with heavy cream" to create hot fudge, Plaintiff has not reasonably alleged that heavy cream is even a necessary ingredient in hot fudge.

Plaintiff also fails to plausibly allege with particularity that the Hot Fudge Topping product label is deceptive in any way. The label depicts a spoon with a scoop of a chocolate substance that is neither completely solid nor liquid. The product contains various forms of milk, just not the kind that Plaintiff would prefer. Plaintiff does not allege that the product contained inside the jar is inconsistent with the product depicted on the outside. She merely disagrees with the "fudge" label and claims that she was misled as a result. But "[w]hat matters is how real consumers understand and react to the advertising," *Bell*, 982 F.3d at 476, and Plaintiff has not sufficiently alleged that real, reasonable consumers would be misled. Here, as in *Reinitz*, "Plaintiff fails to support that a chocolate-tasting fudge product made from oils and whey would mislead a reasonable consumer." *Reinitz*, 2022 WL 1813891, at *4. Although Plaintiff expects her fudge to contain a "non-*de-minimis* relative amount of dairy ingredients containing milk fat," the Court does not simply accept conclusory statements asserting that the reasonable consumer agrees. See [1 at ¶ 50]; see also *Wach v. Prairie Farms Dairy, Inc.*, 2022 WL 1591715, at *3 (N.D. Ill. May 19, 2022) ("plaintiffs' allegations about consumer expectations—*i.e.*, that a reasonable consumer would expect a product labeled 'Premium Vanilla Ice Cream' to contain a non-negligible amount of extracts from vanilla beans, or to include only real vanilla flavoring—are conclusory statements that [the court] need not accept").

### B.     Arkansas and Iowa State Fraud Statutes

Plaintiff's claims pursuant to Iowa and Arkansas state consumer fraud statutes also fail. As Plaintiff herself admits, the consumer fraud statutes in Iowa and Arkansas are "similar" to the

9

ICFA [see 1 at ¶ 94 n.17], and thus also measure claims of deception based on the reasonable consumer [see 1 at ¶ 109 ("a reasonable person would in fact be misled by this deceptive conduct")]. As discussed above, Plaintiff did not sufficiently allege that the reasonable consumer would find the Hot Fudge Topping label misleading, thus she is unable to demonstrate any deceptive act on Defendant's part. See *Reinitz*, 2022 WL 1813891, at *5.

      **C.    Breach of Express and Implied Warranties and the Magnuson-Moss Warranty Act**

Plaintiff brings claims for breach of express warranty, breach of implied warranty, and violation of the Magnuson-Moss Warranty Act ("MMWA"), asserting that "[t]he Product was manufactured, labeled, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained components essential to fudge, such as dairy ingredients without their fat content removed, instead of getting its texture and fat content from vegetable oil." [1 at ¶ 112.] Plaintiff contends that because of "Defendant's outsized role in the market" for products like its Hot Fudge Topping, that it had a "duty to disclose and/or provide non-deceptive descriptions and marketing of the Product." [1 at ¶¶ 113-14.] She further alleges that the product "did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised." [*Id.* at ¶ 117.]

Illinois law provides that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 810 ILCS § 5/2-313(1)(a). "To state a claim for breach of express warranty in Illinois, plaintiffs must allege that the seller: (1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *Aquino v. C.R. Bard, Inc.*, 413 F.Supp.3d 770, 787 (N.D. Ill. 2019). Generally, "a

10

plaintiff must state the terms of the warranty or attach it to the complaint." *Gubala v. CVS Pharmacy, Inc.*, 2015 WL 3777627, at *7 (N.D. Ill. June 16, 2015) (internal quotation and citation omitted).

Implied warranties "arise as a matter of law." *S.A.M. Electronics, Inc. v. Osaraprasop*, 39 F. Supp. 2d 1074, 1088 (N.D. Ill. 1999) (citing *Wheeler v. Sunbelt Tool Co.*, 537 N.E.2d 1332, 1341 (Ill. App. Ct. 1989)). Pursuant to Illinois statute, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 ILCS 5/2-314. "Goods to be merchantable must be at least * * * fit for the ordinary purposes for which such goods are used." *Id.* § 5/2-314(2)(c).

Defendant argues that Plaintiff's warranty claims fail for the same reason as her ICFA claim, which is that its use of the term "hot fudge" is not a guarantee or promise that its product will contain a particular amount of milkfat.[3] As discussed above, the Hot Fudge Topping label does not warrant that the product will contain "dairy ingredients without their fat content removed" [1 at ¶ 112]. Plaintiff does not allege that the product's ingredient list represents inaccurately the ingredients actually used to make the product. Rather, "[t]he Product comported with its packaging." *Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, at *6 (N.D. Ill. Mar. 1, 2022). Plaintiff purchased the thick chocolate substance that the product advertised, and this is fatal to her claim, even if she wished the product were "thicker and richer" [1 at ¶ 6]. See *id.* ("Chiappetta purchased Strawberry Pop-Tarts that did, in fact, contain strawberries[,] * * * * [t]his is fatal to Chiappetta's claims for breach of express and implied warranties.").

---

[3] The Court acknowledges that Plaintiff's warranty claims are not subject to Rule 9(b)'s heightened pleading standard, but "even under Rule 8(a), this circuit has cautioned that 'some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim.'" *Baldwin v. Star Scientific, Inc.*, 78 F.Supp.3d 724, 740 (N.D. Ill. 2015) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

Consequently, Plaintiff's MMWA claim also fails. The MMWA is a "remedial statute designed to protect consumers against deceptive warranty practices." *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 780 (7th Cir. 2011). But the consumer's ability to state a claim under the Act "is dependent on the existence of an underlying viable state-law warranty claim." *Schiesser v. Ford Motor Co.*, 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016). Accordingly, Plaintiff's MMWA claim must be dismissed.

C. **Other Common Law Claims**

1. **Negligent Misrepresentation**

Next, Plaintiff claims negligent misrepresentation. [See 1 at ¶¶ 119-23.] She asserts that Defendant misrepresented the product and "took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant," which induced Plaintiff and the putative class to buy its product. "The elements of a claim for misrepresentation are: '(1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information.'" *Dino Publishing LLC v. Maritimo Marketing Americas, Inc.*, 2019 WL 3857875, at *2 (N.D. Ill. Aug. 16, 2019) (quoting *First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 843 N.E.2d 327, 334-35 (Ill. 2006)).

Plaintiff cannot satisfy even the first element of a negligent misrepresentation claim because she has not plausibly alleged that Defendant made a false statement of material fact. As discussed throughout this opinion, Plaintiff has not sufficiently alleged that the product label inaccurately represents the product inside the jar.

12

2.  **Fraud**

Plaintiff bases her fraud claim on the alleged misrepresentation of the product and adds that "Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations." [1 at ¶ 125.] Defendant argues that Plaintiff fails to meet Rule 9(b)'s heightened pleading standard because the complaint "does not identify a single false, misleading, or deceptive statement ono Hershey's label." [16 at 12.] "To state a claim for common-law fraud, a plaintiff must plead: '(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement.'" *Chiappetta*, 2022 WL 602505, at *8 (quoting *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007)).

As discussed throughout this order, Plaintiff fails to plead with particularity that the product contains a false statement of material fact. Furthermore, "'[s]cienter, knowledge by the defendant that a statement he has made is false, is an essential element of common-law fraud.'" *Id.* (quoting *Ollivier v. Alden*, 634 N.E.2d 418, 424 (Ill. App. Ct. 1994)). Plaintiff baldly asserts that Defendant had fraudulent intent and alleges no other facts in support of her claim, and that is not enough. These allegations are "conclusory and non-factual." *Rudy v. Family Dollar Stores, Inc.*, 2022 WL 345081, at *9 (N.D. Ill. Feb. 4, 2022) (plaintiff failed to plead scienter where she alleged only that defendant's fraudulent intent "is evinced by its knowledge that the Product was not consistent with its representations").

3.  **Unjust Enrichment**

Plaintiff's unjust enrichment claim requires little discussion. The Seventh Circuit has explicitly explained that "'[u]nder Illinois law, unjust enrichment is not a separate cause of

action.'" *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739-40 (7th Cir. 2019) (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011)). "Rather, it's a condition brought about by fraud or other unlawful conduct." *Id.* Plaintiff's unjust enrichment claim thus is "tied to the fate of the claim under the Consumer Fraud Act." *Id.* Because all of Plaintiff's other claims fail, so too does her unjust enrichment claim.

**D.** **Injunctive Relief**

Finally, Defendant argues that Plaintiff lacks standing to seek injunctive relief. The Court need not address this argument here because Plaintiff has failed to state a claim upon which relief can be granted.

**IV.** **Conclusion**

For the foregoing reasons, Defendant's motion to dismiss [15] is granted. However, in an abundance of caution, the Court will allow Plaintiff an opportunity to replead if she believes that she can do so as to any claim dismissed in the opinion above. Any amended complaint must be filed by September 19, 2022. If an amended complaint is not filed by that date, or any extension of the deadline granted by the Court, the dismissal will be converted to "with prejudice" and a final judgment consistent with Federal Rule of Civil Procedure 58 will be entered. If Plaintiff files an amended complaint, Defendant's responsive pleading will be due by October 17, 2022, and the Court will set a status hearing shortly thereafter.

Dated: August 19, 2022

Robert M. Dow, Jr.
United States District Judge